**STATE of Iowa, Appellee,**

v.

**Randy R. RHINER, Appellant.**

No. 83–674.

Supreme Court of Iowa.

June 13, 1984.

Rehearing Denied July 12, 1984.

Charles L. Harrington, Appellate Defender, and Linda Del Gallo, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Richard L. Cleland, Asst. Atty. Gen., and John Powell, Asst. County Atty., for appellee.

Considered by McCORMICK, P.J., and McGIVERIN, LARSON, SCHULTZ and WOLLE, JJ.

WOLLE, Justice.

Defendant appeals from his conviction for second degree burglary, in violation of Iowa Code sections 713.1 and 713.3 (1981). At trial the State relied heavily on inculpatory statements which defendant had given to police officers shortly after he was arrested. Defendant contends that the statements should not have been admitted because he did not voluntarily waive his *Miranda* rights, his statements were not voluntarily made, and his statements resulted from an illegal arrest. Defendant also contends that the belated filing of his motion to suppress deprived him of his constitutional right to effective representation of counsel. We conclude that the State should not have been allowed to introduce the inculpatory statements against defendant because the State failed to establish that defendant's statements were freely and voluntarily given. We therefore reverse and remand for a new trial.

I. *Background Facts.*

On the morning of November 26, 1982, school officials at Waukee discovered that their high school had been broken into and four computer systems, together with several other items, removed. Subsequently, an officer for the Waukee police department was notified by the West Des Moines police department that one of the missing computers had been turned in by Donald Gard, the father of Robert Gard. When the officer arrested and questioned Robert Gard, Robert admitted to the officer that he had broken into the high school. He also implicated three persons, including defendant.

The police officer promptly called a magistrate who interviewed Robert Gard under oath. After the interview, the magistrate issued a search warrant for the premises at "533 3rd," which was believed to be defendant's residence, as well as a warrant for defendant's arrest. The application for the search warrant alleged that defendant had at his premises computers and other property which had been taken from the Waukee high school.

At approximately 9:00 p.m. on November 28, 1983, four police officers arrested defendant at his residence located at 208 Vine Street (the address listed on the search warrant had been incorrect). A search of the premises uncovered no items connected with the break-in at the Waukee school, but the officers did confiscate drug paraphernalia and a firearm. Defendant was taken to the police station and questioned intensively in a series of interviews by several officers. Before defendant made inculpatory statements one of the officers told de-

fendant "that other charges might be filed against him if he didn't cooperate with the investigation of the burglary." After approximately two hours of interrogation defendant made the inculpatory statements that are at issue in this appeal.

## II. *Preservation of Issues for Appellate Review.*

■ Before reaching the merits of defendant's challenge to the admission at trial of his alleged inculpatory statements, we must determine if the issue is properly before us. Defendant did not move to suppress the statements within the time permitted by our rules. Iowa R.Crim.P. 10(2)–(4), 11(1). The belated filing of a motion to suppress would ordinarily be a sufficient ground for us to uphold the trial court's ruling admitting the statements, even though the State did not argue waiver and the trial court did not base its ruling on late filing of the motions. *State v. Beeman,* 315 N.W.2d 770, 778–79 (Iowa 1982); *State v. McCowen,* 297 N.W.2d 226, 227 (Iowa 1980). Here, however, defendant's appellate counsel contends that trial counsel's failure to file motions to suppress within the time permitted by our rules constituted ineffective assistance of counsel.

■ Both the State and defendant refer us to *State v. Hrbek,* 336 N.W.2d 431 (Iowa 1983), where we held on similar facts that trial counsel's failure promptly to move to suppress an inculpatory statement denied a defendant his constitutional rights. *Hrbek* is controlling in this case; the late filing of a motion to suppress an inadmissible inculpatory statement, unaccompanied by a showing of grounds for late filing, is the type of fundamental error which can materially prejudice a defendant's case. *Id.* at 436. Moreover, defendant has established the requisite degree of prejudice resulting from his counsel's failure to seek timely suppression of the statements. *See Strickland v. Washington,* — U.S. —, —, 104 S.Ct. 2052, 2064, 80 L.Ed.2d —, — (1984); *State v. Miles,* 344 N.W.2d 231, 234–35 (Iowa 1984). Because the statements provided the only substan-

tial evidence corroborating the accomplice testimony of Robert Gard, it is reasonably probable that if the statements had been suppressed the jury would have had a reasonable doubt concerning guilt. We therefore address the merits of defendant's challenges to admissibility of the inculpatory statements.

## III. *Were the Statements Admissible?*

■ In *State v. Hrbek* we were not in a position to decide the issue of voluntariness of defendant's inculpatory statements because the trial court had not first passed on the question. 336 N.W.2d at 437. Here we face no such procedural barrier. The trial court heard the parties' evidence concerning waiver of his right to counsel and voluntariness of defendant's statements, passed the question of late filing of motions to suppress, and squarely decided the merits of defendant's substantive challenges to admissibility of the statements. We therefore are in a position in this case to decide defendant's contentions that he did not waive his *Miranda* rights and that his statements were not freely and voluntarily given.

■ A. Waiver of *Miranda* Rights. We first address defendant's contention that he did not waive his constitutional right to counsel before making inculpatory statements to the police. The State has the "heavy burden" of proving that defendant voluntarily, knowingly and intelligently waived his *Miranda* rights. *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694, 724 (1964). This *Miranda* issue is separate and distinct from defendant's claim that the statements were not freely and voluntarily given. *See State v. Snethen,* 245 N.W.2d 308, 311 (Iowa 1976).

■ A defendant's silence following recitation of a *Miranda* warning is ordinarily not sufficient for a valid waiver. *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286, 292 (1979); *State v. Lamp,* 322 N.W.2d 48, 54 (Iowa 1982). As we said in *State v. Lamp:*

[A]lthough waiver need not be express, it must consist of some affirmative conduct indicative of voluntary, intentional, and knowing relinquishment of the [Miranda rights]; waiver cannot be presumed from inaction or mere silence.

322 N.W.2d at 54. Defendant argues that the State failed to meet its burden to prove an express waiver because the several officers who testified on the issue gave contradictory testimony. We find, however, that there is sufficient uncontroverted evidence of a valid waiver when the totality of circumstances is reviewed. The *Miranda* warning was read to the defendant several times: first, by one of the officers at the time he was arrested, and later by other officers while he was being interviewed at the police station. Each officer read the *Miranda* rights to defendant before questioning began. Although defendant remained silent after he was first arrested and again the first time he was read his rights at the station, one of the arresting officers credibly testified that at the police station the defendant said,

Yeah, I will be glad to talk to you about it. I have no guilt in what you are charging me with.

Another officer testified that defendant said to him that he understood his rights and did not have any objection to talking with the police, although he didn't know anything.

Under these circumstances we believe that the defendant voluntarily, knowingly and intelligently waived his right to be represented by counsel before giving statements to the officers.

■ **B. Voluntariness of Defendant's Statements.** In reviewing defendant's claim that his inculpatory statements were involuntary, we make an independent, de novo review of the totality of the relevant circumstances. *State v. Whitsel*, 339 N.W.2d 149, 153 (Iowa 1983); *State v. Jump*, 269 N.W.2d 417, 423 (Iowa 1978). Familiar and oft-quoted principles guide our determination of voluntariness. In two recent cases we have summarized and clarified many of the factors which we consider in drawing the line between statements which are the product of a defendant's essentially free and unconstrained choice (therefore admissible) and those which are involuntary (and therefore inadmissible). In *State v. Hodges*, we held inadmissible defendant's statement given after a police officer had told him a lesser charge than first degree murder would be much more likely if he gave "his side of the story." 326 N.W.2d 345, 349 (Iowa 1982). Thereafter, in *State v. Whitsel*, we decided that a defendant's inculpatory statements were admissible against him even though police officers had offered to recommend psychiatric help and inform the prosecutor of defendant's cooperation. 339 N.W.2d at 153. In *Whitsel*, quoting from *Hodges*, we confirmed the following standard for measuring the effect of allegedly promissory or coercive statements by police interrogators:

In order to establish the voluntariness of a defendant's inculpatory statements, the State must demonstrate from the totality of circumstances that the statements were the product of an essentially free and unconstrained choice, made by the defendant at a time when his will was not overborne nor his capacity for self-determination critically impaired. *State v. Cullison*, 227 N.W.2d 121, 127 (Iowa 1975).

339 N.W.2d at 149. Quoting further from *Hodges*, we also said in *Whitsel* that the following factors are to be considered in deciding questions of involuntariness:

The defendant's knowledge and waiver of his *Miranda* rights, the defendant's age, experience, prior record, level of education and intelligence, the length of time defendant is detained and interrogated, whether physical punishment was used, including the deprivation of food or sleep, defendant's ability to understand the questions, defendant's physical and emotional condition and his reaction to the interrogation, whether any deceit or improper promises were used in gaining the admissions, and any mental weakness the defendant may possess.

*Id.*

Applying the same standard to the totality of circumstances of this case and con-

sidering those same listed factors, we conclude that defendant did not freely and voluntarily make his inculpatory statements.

Defendant was nineteen years old. He was advised of his *Miranda* rights and validly waived those rights. Defendant did not ask to see an attorney or family member. He was interviewed for approximately two hours, during ordinary waking hours. There were four officers interviewing him, and from one to four officers at any given time in the room with defendant. The officers confronted defendant with incriminating information which they had obtained and told defendant they knew he was involved in the burglary. He was loudly accused of lying.

The critical impetus for defendant's inculpatory statements seems clearly to have been one officer's statement to him, midway through the intense questioning, that "other charges might be filed against him if he didn't cooperate with the investigation of the burglary." The officer testified at trial and admitted that he had made that coercive statement to defendant. Moreover, the circumstances facing the investigating officers at the time do not excuse their use of that statement during the questioning, but those circumstances do lend credence to the fact that the threatening statement was made to defendant and was important to him at the time. The officers had obtained drug paraphernalia and a firearm during the search of defendant's residence. The officers had initially considered filing charges against defendant for illegal possession of those items and had told him so. The officers then learned, however, that "there could be some problems with the search warrant." (The prosecution later conceded that the search warrant had not validly been obtained, and the items which had been seized were suppressed prior to trial.) When the investigating officer, during the questioning, learned there might be no evidence to support "other charges," he chose not to tell defendant the real reason other charges might not be filed. The officer did not tell defendant that the potential "other

charges" might be in jeopardy because physical evidence had not validly been seized. Instead the officer chose to inform defendant that he might be in jeopardy on other charges unless he cooperated—a threat, thinly veiled at best, that the filing of other charges might be the price defendant would pay for not admitting his involvement in the burglary.

▮ The State does not contend that the officer made no statement which was threatening or promissory in nature, but it does vigorously argue that it is purely speculative whether the statement induced the defendant to confess. Were the burden on defendant to prove that his statements were involuntary, there would be more substance to the State's contention. The State, however, has the heavy burden of establishing that defendant's statements were voluntary and not induced by threat or promise of leniency. The State did not meet its burden in this case.

We have not previously hesitated to exclude from evidence inculpatory statements which followed shortly after officers made implied threats or gave promises of leniency. *See State v. Hrbek*, 336 N.W.2d at 436 (case remanded for voluntariness hearing where officer testified that "some slack might be cut to him in the murder of Mrs. Fisher"); *State v. Ware*, 205 N.W.2d 700, 703 (Iowa 1973) (statement found involuntary where officer told defendant "it would go easier if he wanted to tell us anything"); *State v. Mullin*, 249 Iowa 10, 18, 85 N.W.2d 598, 602–03 (1957) (statements held involuntary where officer, a friend of defendant, told defendant that he would "get farther with the court by telling the truth"). In *State v. Hodges*, we said:

> The line between admissibility and exclusion seems to be crossed, however, if the officer also tells the suspect what advantage is to be gained or is likely from making a confession. Ordinarily the officer's statements then become promises or assurances, rendering the suspect's statements involuntary.

326 N.W.2d at 349 (citation omitted). The circumstances in *State v. Hodges* were notably similar to those in this case. The defendant in *Hodges* was eighteen years of age with ten years of education. He had been advised of his *Miranda* rights and indicated he understood his rights before making the statement and signing a written waiver. He was interviewed for two hours, during ordinary waking hours, and he never asked for an attorney or requested that the questioning cease. After the interrogators confronted the defendant with incriminating evidence and told him they believed he had committed the offense, one of the officers said he told defendant that if he gave a statement "there was a much better chance of him receiving a lesser offense than first degree murder ...." Under those circumstances we found that the statements were involuntary. 326 N.W.2d at 349.

Here, too, we find that defendant's inculpatory statements were improperly induced by what a police officer said to him and were therefore not freely and voluntarily given. Defendant had a right to have a timely motion to suppress filed by his trial counsel and sustained by the trial court on the basis of his challenge to voluntariness of his inculpatory statements. Because the evidence establishes that his inculpatory statements were not voluntarily given, we need not address defendant's additional contention that his statements were also the fruit of an illegal arrest.

Defendant is entitled to a new trial at which the State will not be allowed to use against him the involuntary inculpatory statements which he gave to police officers after his arrest.

REVERSED AND REMANDED.