STATE of Iowa, Plaintiff-Appellee,

v.

**Howard A. CROOKS,
Defendant-Appellant.**

**No. 84–1013.**

Court of Appeals of Iowa.

Aug. 29, 1985.

Gary K. Anderson, for Anderson & Wheeler, Council Bluffs, for defendant-appellant.

Thomas J. Miller, Atty. Gen., and Valencia Voyd McCown, Asst. Atty. Gen., for plaintiff-appellee.

Considered by DONIELSON, P.J., and SCHLEGEL, and SACKETT, JJ.

SACKETT, Judge.

Defendant appeals from judgment and sentence for first-degree kidnapping in violation of Iowa Code section 710.2, asserting that the trial court erred: (1) in failing to suppress a taped statement given by defendant implicating himself in the crime; (2) in allowing the victim to testify that defendant told her he had escaped from a Nebraska prison while serving a sentence for murder and in denying defendant's motion for mistrial after a police officer testified that he was informed a girl was being held by an escaped convict; and (3) in failing to dismiss the trial information for the state's failure to file it within forty-five days after defendant's arrest in Indiana. The facts of the case are as follows.

On August 11, 1983, the Indiana State Police received a report that a girl who had been kidnapped in Council Bluffs, Iowa, was being held in a motel in Mitchell, Indiana. Indiana authorities subsequently arrested defendant, gave him his *Miranda* rights, and took him to the police station. Defendant gave a false name at this time. While at the station, defendant asked for an attorney. The authorities stopped questioning defendant and transferred him to the jail. During the booking process, the police were notified of the defendant's true name and that defendant might be a Nebraska penitentiary escapee. The defendant was again given his *Miranda* rights. While at the jail defendant made a tape-recorded statement implicating himself in the crime.

On August 11, 1983, a warrant for defendant's arrest was issued by an Iowa court. The defendant was served with a copy of the warrant on August 22. Defendant declined to waive extradition to Iowa. Defendant was returned to Iowa on October 27, 1983. On November 1, 1983, a trial information was filed accusing defendant of first-degree kidnapping.

Defendant made several pretrial motions. He filed a motion to suppress the tape-recorded statement on the grounds that it was obtained in violation of his *Miranda* rights. The trial court denied the motion. Defendant also filed a motion to dismiss the trial information on the grounds that it was not filed within forty-five days of defendant's arrest. This motion was also denied. The defendant unsuccessfully sought discretionary review of the ruling.

Defendant filed a motion in limine to exclude any evidence of his prior record and his escape from prison. The trial court sustained the motion but allowed the victim

to testify as to what defendant had told her about his escape. The court ruled that this testimony was admissible for the purpose of showing the victim's state of mind during the crime. At the trial, the victim testified that she was forced at gunpoint to travel with defendant and that during the course of the abduction defendant raped her several times. She also stated that during this time defendant told her that he had escaped from a Nebraska penitentiary while serving a sentence for murdering two policemen. Later in the trial, an Indiana local police officer stated that he was advised by a state trooper that a girl was being held by an escaped convict. Defendant objected to this testimony and moved for a mistrial. The motion was denied. Defendant was found guilty and sentenced for first-degree kidnapping, and this appeal ensued.

## I. Suppression of Taped Statement

Defendant argues that the trial court erred by failing to suppress as evidence the taped statement given by the defendant to Indiana law enforcement officers. Defendant claims that the tape-recorded statement was obtained after he had invoked his right to counsel. Defendant contends he was never given an opportunity to phone counsel and that he did not waive that right by responding to police-initiated custodial interrogation.

Our review of the trial court's denial of the motion to suppress is de novo. *State v. Phams,* 342 N.W.2d 792, 795 (Iowa 1983).

The record shows that the defendant was given his *Miranda* rights at the time of his arrest. Defendant then identified himself as James Lee Hatten. The record reflects that when Indiana authorities began to question him at the police department, defendant asked for an attorney and stated he might make a statement later. The Indiana authorities recognized the "magic words" and stopped questioning the defendant. The record indicates that defendant was transferred to the county jail for processing and that the opportunity to contact an attorney would have been made available to the defendant after processing

was completed. However, during the processing the Indiana police were notified of defendant's real name and were alerted to look for identifying marks. The Indiana officer testified at the suppression hearing:

A. At this point Trooper Cogwell was fingerprinting him, I left the desk, walked over to the fingerprint cabinet which is a distance of about what we are here, ten, twelve, fifteen feet, opened up his shirt and there were two birds over both breasts.

Q. Did you say anything to Mr. Crooks?
A. I said, "I don't think you're Jimmy Lee Hatten." And he said, "You're right, I'm Howard 'Buddy' Crooks."

Defendant was then processed with his real name. Defendant testified at the suppression hearing that he wanted to make a statement at that time because he did not want to be accused of any unsolved crimes in that area. Defendant was given a written form waiving his rights and he signed it before making the taped statement. At that time, his rights were read to him again.

The trial court found that taped statement was initiated by the defendant and "... that the voluntary statement by the defendant with law enforcement officers indicate abandonment of the earlier request for counsel." The court further found that there was no coercion or threats involved and that the statement was made knowingly with respect to his right to counsel.

The general rule is that an accused in custody is not subject to further interrogation by the authorities when he has requested his right to counsel, "... unless he validly waives his earlier request for the assistance of counsel." *Smith v. Illinois,* — U.S. —, — 105 S.Ct. 490, 492, 83 L.Ed.2d 488, 493 (1984) (citing *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378, 386 (1981)). This is a two-part inquiry:

(1) whether the accused actually invoked his right to counsel, and if so,

(2) the court may admit his responses to further questioning only on finding that he:

(a) initiated further discussions with the police, and

(b) knowingly and intelligently waived the right he had invoked.

*Smith v. Illinois,* —— U.S. at ——, 105 S.Ct. at 493, 83 L.Ed.2d at 493–94 (citing *Edwards v. Arizona,* 451 U.S. at 484–86, 101 S.Ct. at 1884–85, 68 L.Ed.2d at 386–87; *Miranda v. Arizona,* 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706–07 (1966)).

There is no dispute from the record that defendant invoked his right to counsel when he was questioned initially at the police station. When defendant asked for an attorney, all questioning stopped.

■ Defendant argues that the police initiated further interrogation during the booking process which prompted him to make the taped statements. The state contends that obtaining the true identification of the defendant as Howard Crooks did not amount to interrogation. We agree. Obtaining "incidental identifying information" such as name, address, and telephone number from a person in custody is not the type of interrogation which *Miranda* seeks to avoid. *State v. Beatty,* 305 N.W.2d 496, 498 (Iowa 1981).

■ As to whether the taped statement was initiated by the police or the defendant, the defendant testified at the suppression hearing:

A. While I was being fingerprinted, Mr. Richardson was on the phone in the next room and I heard him say something in effect, "we got our man" or whatever he was talking about. Maybe I do not know.

Q. Then what happened? A. Then he came in and checked on my birds and I told him, I said, "Well, okay, you got me.

Q. And what did you mean by that? A. Well, that he had found out my true name and I could tell the way he—

the expression on his face or whatever something had transpired.

Q. And then what happened? A. Then when I was finished fingerprinting under Howard A. Crooks, I went in the room and I said that I would do anything I could from the time that I left Nebraska to show that I didn't commit no crime.

Q. What do you mean by that? A. Well, that I wanted to make my whereabouts known, that I hadn't been involved in any other criminal activities since I left the penitentiary.

\* \* \* \* \* \*

A. My intentions were to give them the things that I had done since I had escaped from Nebraska in order that I would be treated better and not have to be put in solitary, which I was later anyway in the jail.

\* \* \* \* \* \*

A. Did you volunteer to give a statement to the police officers, Officers Richardson or Edwards? A. I suppose I did, but I don't know whether I mentioned it first or Mr. Richardson mentioned it first or—I said words to the effect—I can't say the exact words—but I said, "I will tell you what happened since I have been out."

We believe the record indicates that defendant initiated further discussions with the police after he invoked his right to counsel.

■ Finally, as to whether the defendant knowingly and intelligently waived his right to counsel, defendant argues that he felt threatened and thought he had to give a statement to the officers. Defendant testified at the suppression hearing that he had asked for a lawyer a couple of times and finally realized no one was going to get him an attorney. The state maintains that the defendant waived his rights in writing an hour before the taped statement was made, and then his rights were read to him again before he made the statement. The

state contends that the defendant knowingly and intelligently waived his rights prior to making the taped statement.

There is no evidence in the record of any promissory or coercive statements made by the police interrogators which would have influenced defendant in his decision to make a voluntary statement. *See State v. Rhiner*, 352 N.W.2d 258, 262 (Iowa 1984). In determining whether defendant voluntarily waived his rights, the following factors have been set out by the Iowa Supreme Court and are to be considered:

The defendant's knowledge and waiver of his *Miranda* rights, the defendant's age, experience, prior record, level of education and intelligence, the length of time defendant is detained and interrogated, whether physical punishment was used, including the deprivation of food or sleep, defendant's ability to understand the questions, defendant's physical and emotional condition and his reaction to the interrogation, whether any deceit or improper promises were used in gaining the admissions, and any mental weakness the defendant may possess.

*State v. Rhiner*, 352 N.W.2d at 262 (quoting *State v. Whitsel*, 339 N.W.2d 149, 153 (Iowa 1983)). In addition to being voluntary, the waiver must:

... constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

*Edwards v. Arizona*, 451 U.S. at 482, 101 S.Ct. at 1884, 68 L.Ed.2d at 385.

In applying these factors and examining the totality of the circumstances in this case, we conclude that defendant knowingly and intelligently waived his rights. Defendant was given his *Miranda* rights several times. He was familiar with police procedure since he had prior experience with law enforcement officials. He read and signed a waiver of rights form, was taken to the hospital for a rape test, and returned to make the statement an hour after he had signed the waiver. Defendant had time to reconsider waiving his rights and making the statement, but instead chose to make the statement. The waiver of rights form was read to him again before the questioning began. The trial court did not err by failing to suppress as evidence the taped statement.

## II. Escaped Prisoner Testimony

We first consider defendant's claim that the trial court should not have allowed the victim to testify that the defendant was a prison escapee. The defendant argued that such evidence was excluded by the motion in limine and its prejudicial effect far outweighed its probative value.

■ Our review is to correct errors at law. Iowa R.App.P. 4. The trial court ruled that the motion in limine excluded evidence of defendant's prior convictions but that the victim would be permitted to testify that defendant told her he had escaped from prison. The court stated this evidence was relevant for the purpose of proving the victim's state of mind at the time of the alleged kidnapping and was probative to the issues of fear and attempts to escape.

It is within the trial court's discretion to decide whether the danger of unfair prejudice outweighs any probative value. *State v. Walsh*, 318 N.W.2d 184, 187 (Iowa 1982). We cannot find that this discretion has been abused. The record reflects that the victim testified that the defendant told her he had to get out of town, that he had escaped from the Lincoln Penitentiary, and that he was there for shooting two police officers. The defendant used his status as an escaped prisoner to frighten and coerce the victim of the crime. The victim's testimony was not offered as proof of defendant's prior crime, but was offered to show the threats made and the victim's nonconsenting nature. The relevancy of the evidence was established sufficiently to place it within the discretion of the court to admit it. *See State v. Hood*, 346 N.W.2d 481, 484 (Iowa 1984) (trial court did not abuse discretion in admitting co-defendant's testi-

mony that defendant was a parolee). Accordingly, we hold that the trial court did not abuse its discretion in admitting the victim's testimony.

■ Additionally, defendant counsel unsuccessfully moved for a mistrial based upon a violation of the ruling on the motion in limine. An Indiana police officer testified that prior to his arrest of the defendant, he was advised "... that there was a girl being held against her will there by an escaped convict." A trial court has broad discretion in ruling on a motion for mistrial, and we will not overturn a ruling denying such a motion absent a showing that the court abused its discretion in doing so. *State v. Washington,* 308 N.W.2d 422, 424 (Iowa 1981). We see no reason to disturb the court's ruling in this case because we find it was harmless error. This evidence was already properly in the record as a result of the victim's testimony. *See State v. Hood,* 346 N.W.2d 481, 484 (Iowa 1984) (no reversible error if evidence otherwise properly in the record). We find no reversible error.

### III. Trial Information

■ Defendant contends that the trial court erred in failing to dismiss the trial information since the state did not file it within forty-five days after defendant's arrest in Indiana. Iowa Rule of Criminal Procedure 27(2)(a) states:

When an adult is arrested for the commission of a public offense ... and an indictment is not found against him within forty-five days, the court must order the prosecution to be dismissed, unless good cause to the contrary is shown or the defendant waives his right thereto.

Defendant was arrested in Indiana and refused to waive extradition to Iowa. Delay that is attributable to the defendant is "good cause" under the speedy indictment rule. *See State v. VanRees,* 246 N.W.2d 339, 342 (Iowa 1976); *State v. Fryer,* 243 N.W.2d 1, 5 (Iowa 1976). We believe that defendant's decision not to waive extradition was good cause for any delay in filing the information.

Defendant's conviction and sentence are affirmed.

AFFIRMED.