STATE of Iowa, Appellee,

v.

Jess Ellsworth WHITSEL, Appellant.

No. 68637.

Supreme Court of Iowa.

Oct. 19, 1983.

Henry M. Keyes of Keyes, Bennett & Kucera, Cedar Rapids, for appellant.

Thomas J. Miller, Atty. Gen., Mary Jane Blink, Asst. Atty. Gen., and Jane Spande, Asst. County Atty., for appellee.

Considered by REYNOLDSON, C.J., and McCORMICK, McGIVERIN, CARTER and WOLLE, JJ.

McGIVERIN, Justice.

On appeal from his conviction of kidnapping in the first degree in violation of Iowa Code sections 710.1–.2 (1981), defendant asserts the trial court erred in: (1) Overruling

his motion to suppress incriminating statements made by defendant; (2) denying his requested jury instruction that an unfavorable inference be drawn from the State's failure to introduce certain evidence; and (3) overruling defendant's motion for new trial and motion in arrest of judgment which were premised on allegations of prosecutorial misconduct and newly discovered evidence. Additionally, defendant contends he was denied effective assistance of trial counsel. Finding no reversible error, we affirm the conviction.

Jess Whitsel was arrested on November 24, 1981, and charged by information with first-degree kidnapping, Iowa Code sections 710.1–.2, and second-degree sexual abuse, Iowa Code sections 709.1, .3, on the basis of the sexual abuse and abduction of a young woman on October 2, 1981. Whitsel was found guilty on both counts by a jury but was convicted and sentenced only on the first-degree kidnapping charge because second-degree sexual abuse is a lesser included offense of first-degree kidnapping. See State v. Whitfield, 315 N.W.2d 753, 755 (Iowa 1982).

While walking home on a Cedar Rapids street shortly after midnight, during the early morning hours of October 2, 1981, the victim was attacked and subjected to sexual abuse and then taken by pickup truck to a secluded area, a considerable distance away, where she was again sexually abused.

On the basis of information supplied by defendant's wife, defendant was arrested on November 24, 1981, by Marion police. Defendant was detained at the Marion police station for about thirty minutes. No interrogation occurred at the police station and defendant made no incriminating statements. Defendant did request that he be allowed to talk to his wife. A call was placed to his wife but she could not be reached at her residence.

The defendant was then transported to the Linn County sheriff's office. There, defendant was advised of his Miranda rights. He read a waiver of rights form, expressed his understanding of his rights and signed the waiver. Whitsel was then questioned, during which time he made an inculpatory statement detailing the abduction and sexual abuse of the young woman involved here, as well as other victims.

On November 24, the State seized a piece of carpet from the bed of Whitsel's impounded pickup truck and sent it for analysis to the Divison of Criminal Investigation for the State of Iowa (D.C.I.).

On December 4, 1981, defendant filed a motion for discovery seeking to "review police reports and evidence in the possession of the County Attorney."

On January 25, 1982, defendant filed a motion to suppress his confession on grounds that he did not voluntarily, knowingly and intelligently waive his Miranda rights and that his confession was not voluntary. After an evidentiary hearing, the trial court denied defendant's motion to suppress and his statement was later admitted into evidence at trial.

On January 26, the D.C.I. sent its lab report to the county attorney. A copy promptly was forwarded to defense counsel. The report stated that the tests did not show the presence of semen, blood or pubic hairs on the carpet from defendant's truck bed.

During trial, defendant timely requested that the court instruct the jury that it could draw unfavorable inferences against the State's case from its failure to produce certain evidence at trial. Defendant's request was denied.

After the guilty verdict, but prior to sentencing, new counsel was appointed for the defendant. Defendant filed a motion for new trial and in arrest of judgment, as amended, which was overruled after a hearing. Defendant was sentenced and then appealed.

I. *Motion to suppress.* Defendant contends that the court erred in overruling his motion to suppress the typewritten and signed inculpatory statement he gave to law enforcement officers while in custody. He argues that the statement was taken in violation of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16

L.Ed.2d 694 (1966), and that it was not voluntary.

■ The adverse ruling on defendant's pretrial suppression motion preserved error for our review. *State v. Hilpipre,* 242 N.W.2d 306, 309 (Iowa 1976).

The basic issues are whether the State proved by a preponderance of the evidence that the statement received was made by defendant after an effective waiver of his *Miranda* rights and whether such statement was voluntary. These are separate issues. *State v. Hodges,* 326 N.W.2d 345, 347 (Iowa 1982).

■ Because defendant is asserting a violation of basic constitutional safeguards, our scope of review is de novo whereby we will make an independent evaluation of the totality of the circumstances. *Id.*

■ A. *Waiver of Miranda rights.* It is well settled that an individual may legally waive his or her constitutional rights. *State v. Hilpipre,* 242 N.W.2d at 309. However, the State must prove by a preponderance of the evidence that such waiver was knowingly, voluntarily and intelligently given. *Id.* We have previously stated that:

> An *express written waiver* "is usually strong proof of the validity of that waiver." It is not sufficient alone, however, to establish waiver; we must find from the facts and circumstances that the waiver was voluntarily, knowingly and intelligently made.

*Fryer v. State,* 325 N.W.2d 400, 409 (Iowa 1982) (emphasis added) (citations omitted).

The record reveals that Whitsel was arrested at about noon on November 24, 1981, by the Marion police. Whitsel was detained at the Marion police station for approximately thirty minutes and then released into the custody of the Linn County sheriff's office.

At the sheriff's office, Whitsel was taken to an interview room to be questioned by two detectives. Prior to questioning, the detectives advised Whitsel of his *Miranda* rights and obtained Whitsel's signature on a Waiver of Rights form. Whitsel subsequently stated, "Do you think I need an attorney?" The detectives replied that they could not advise him on that question. Whitsel was then handed a phone book and permitted to look through the "yellow pages" for a lawyer. Whitsel looked at the phone book for a couple of minutes, then set it down on a desk and said, "I guess I don't want to talk to an attorney." Whitsel, thereafter, did not request to talk to an attorney at any time during the questioning. *Miranda* provides that:

> If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease .... If the individual states that he wants an attorney, the interrogation must cease until an attorney is present.

384 U.S. at 473–474, 86 S.Ct. at 1627–1628, 16 L.Ed.2d at 723. *Accord State v. Moon,* 183 N.W.2d 644, 649 (Iowa 1971).

Whitsel argues that his general reluctance to answer questions should be viewed as an implied request to (1) remain silent, and (2) talk to an attorney. Whitsel also argues that his inquiry about whether he needed an attorney was actually a request for an attorney. Under both arguments, he concludes that his incriminating statement, made subsequent to his written waiver of rights, was not constitutionally admissible into evidence because questioning should have been stopped after he allegedly made an implicit invocation of his rights.

■ We find that Whitsel's actions and expressions were not a sufficient indication of a desire to exercise his rights under *Miranda.* Whitsel at no time expressed his desire to remain silent. He expressed a general reluctance at times to answer questions which is a natural reticent posture taken by one being questioned. However, the record does not reveal a single instance of Whitsel indicating in any manner at any time that he wished to remain silent or have the services of an attorney. In fact, Whitsel expressly stated that he did not want to talk to an attorney after he had been given an opportunity to call a lawyer.

■ Furthermore, Whitsel's argument that his inquiry concerning the need for an attorney should be viewed as a request for an attorney has no merit. We have previously held that a defendant's inquiry as to the advisability of having an attorney present during questioning is not a sufficient statement to request counsel. *State v. Johnson,* 318 N.W.2d 417, 430 (Iowa 1982).

■ Under the totality of the circumstances, which include Whitsel's express written waiver of rights and subsequent statement that he did not want to talk to an attorney, we find that the State satisfied its burden of proving that Whitsel did voluntarily, knowingly and intelligently waive his *Miranda* rights.

B. *Voluntariness of the statement.* The issue concerning the voluntariness of Whitsel's inculpatory statement was recently addressed by this court in *State v. Hodges,* 326 N.W.2d at 347. We stated:

> In order to establish the voluntariness of a defendant's inculpatory statements, the State must demonstrate from the totality of circumstances that the statements were the product of an essentially *free and unconstrained choice,* made by the defendant at a time when his will was not overborne nor his capacity for self-determination critically impaired. *State v. Cullison,* 227 N.W.2d 121, 127 (Iowa 1975).

*Id.* (emphasis added).

This standard essentially addresses the extent to which defendant's statements are affected by the use of coercion by law enforcement officers. We continued to say that:

> [T]he issue of whether officers have exercised coercion so as to render statements involuntary [is determined] by examining the totality of the circumstances.... The "totality of the circumstances" encompasses the characteristics of the accused and the details of the interrogation process.

*Id.* at 347–48 (citing *State v. Munro,* 295 N.W.2d 437, 440 (Iowa 1980) ).

This court has found that many factors are to be considered under the totality of the circumstances but that no one factor is determinative. *Id.* at 348. These factors include:

> The defendant's knowledge and waiver of his *Miranda* rights, the defendant's age, experience, prior record, level of education and intelligence, the length of time defendant is detained and interrogated, whether physical punishment was used, including the deprivation of food or sleep, defendant's ability to understand the questions, the defendant's physical and emotional condition and his reaction to the interrogation, whether any deceit or improper promises were used in gaining the admissions, and any mental weakness the defendant may possess.

*Id.* (citations omitted).

■ Whitsel contends that his inculpatory statement was involuntary because improper promises were used in gaining his admission. We recognize that confessions obtained through a promise of leniency by a police officer are deemed involuntary. *Id.* *State v. Hilpipre,* 242 N.W.2d at 310–311. However, our examination of the record reveals that no "promise of leniency" was made to Whitsel.

During the course of questioning, Whitsel volunteered information concerning his prior arrest on a sexual abuse charge in New Jersey in which the officers offered psychiatric help in exchange for cooperation with the police. In response to this statement offered by Whitsel, the detectives told Whitsel that they would recommend to the county attorney that Whitsel receive psychiatric help and tell the county attorney of his cooperation. They emphasized, however, that they could not make any promises or give any guarantees and would only relate to the county attorney what had been said. Whitsel then made his confession following this exchange.

■ We do not consider either an offer to recommend psychiatric help or an offer to inform the prosecutor of defendant's cooperation to be tantamount to a promise of leniency. *United States v. Robinson,* 698

F.2d 448 (D.C.Cir.1983) (court found defendant's confession to be voluntary under the totality of the circumstances which included an agent's promise to make defendant's cooperation known to the prosecutor); *United States v. Fera,* 616 F.2d 590 (1st Cir.) (court stated that a promise merely to bring any cooperation on the part of defendant to the prosecuting attorney's attention does not constitute a coercive promise sufficient to render any subsequent statement involuntary), *cert. denied,* 446 U.S. 969, 100 S.Ct. 2951, 64 L.Ed.2d 830 (1980); *State v. Miller,* 110 Ariz. 597, 522 P.2d 23 (defendant's confession was voluntary under the totality of the circumstances which included a statement by a police officer that implied that defendant would receive psychiatric help in exchange for his cooperation with the police), *cert. denied,* 419 U.S. 1004, 95 S.Ct. 325, 42 L.Ed.2d 281 (1974); *State v. Figaroa,* 3 Haw.App. 377, 650 P.2d 1373 (1982) (court found that trial court did not abuse its discretion in finding defendant's inculpatory statement to be voluntary where defendant claimed that police had promised psychiatric help and policemen testified that no promise of psychiatric help had been made); *State v. Noe,* 86 Ill.App.3d 762, 42 Ill.Dec. 105, 408 N.E.2d 483 (1980) (court stated that vague suggestions of the possibility of psychiatric help are not likely to induce an innocent man to confess and therefore do not make defendant's statements involuntary); *State v. Creekmore,* 208 Kan. 933, 495 P.2d 96 (1972) (statement was considered voluntary where a detective suggested that if the charges were true defendant needed psychiatric help and he would do what he could to get the defendant such help, because no promise was ever made); *State v. Miller,* 316 N.W.2d 23 (Minnesota 1982) (defendant's confession was voluntary under the totality of circumstances which included a statement, made by police officers to defendant, that they would try to get him psychiatric help); *State v. Muenchau,* 209 Neb. 552, 308 N.W.2d 824 (1981) (inculpatory statement, made following an officer's statement to defendant that he would advise county attorney that defendant had cooperated by

giving a statement, was not deemed to be involuntary).

Furthermore, the discussion of psychiatric help was *initiated* by Whitsel which militates against his claim that he was coerced into confessing by a "promise of leniency." *United States v. DeLuca,* 692 F.2d 1277 (9th Cir.1982) (court affirmed trial court's finding that defendant's inculpatory statements were voluntary, and not made in response to a promise of leniency, based on the fact that defendant had initiated the meeting with the agents in an attempt to generate an offer of immunity and the agents had only promised to inform the prosecutor of defendant's cooperation); *United States ex rel. Liss v. Mancusi,* 427 F.2d 225 (2nd Cir. 1970) (defendant's confession was deemed voluntary within the totality of the circumstances which included an assurance by police, after defendant and his wife told police that he had been under psychiatric care for several months, that defendant would receive psychiatric treatment and care); *Brokaw v. United States,* 368 F.2d 508 (4th Cir.1966) (no improper promise or inducement was found where appellant initially stated that he needed medical attention and then an agent responded that he would call the need to the attention of the marshal and he (the agent) was sure that the marshal would provide it), *cert. denied,* 386 U.S. 996, 87 S.Ct. 1316, 18 L.Ed.2d 344 (1967).

Other factors relevant to this determination suggest that Whitsel's statement was voluntary and not the result of coercion. We have found that prior to Whitsel's confession he had voluntarily, knowingly and intelligently waived his *Miranda* rights. Whitsel was 33 years old, employed as a service station attendant, and had previously been arrested and questioned on similar charges. Whitsel's confession at 3:25 p.m. came less than three hours after questioning began. The length of detention time was thus relatively short and during normal waking hours. Defendant was offered coffee and was permitted to go to the restroom during the interview. Whitsel can point to no threats or any use of force that may render his statement involuntary.

■ In sum, the totality of the circumstances reveals the complete absence of any form of coercion and demonstrates that the inculpatory statement made by Whitsel was voluntary.

The court was correct in refusing to suppress Whitsel's inculpatory statement.

II. *Requested jury instruction.* Defendant next contends that the court should have given his requested instruction that the jury be permitted to infer from the State's failure to introduce certain available evidence at trial that such evidence would have been unfavorable to the State's case.

The evidence in question was a piece of carpet that covered the bed of Whitsel's pickup truck. Whitsel testified that this carpet was identical to a piece of carpet, obtained from the cab of the truck, that was introduced into evidence. He commented that they apparently came from the same roll of carpet. Although the offense occurred on October 2, 1981, the carpet in the bed of the truck was not seized until November 24. The carpet was sent to the State D.C.I. laboratory for analysis. On January 26, 1982, a lab report was sent to the county attorney who forwarded a copy to defense counsel. The report stated that the D.C.I. tests revealed no semen, blood, or pubic hairs on the carpet. The record is unclear as to who had possession of the carpet during the trial. Whitsel contends that the carpet was in the possession of the county attorney's office and argues that our decision in *Quint-Cities Petroleum Co. v. Maas,* 259 Iowa 122, 143 N.W.2d 345 (1966), permits the jury to consider as an unfavorable inference the State's failure to introduce this carpet into evidence. In *Quint-Cities* we said:

> In this connection it stands without argument that where *relevant* evidence is within the control of a party whose interests would naturally call for its production, and he fails to do so without satisfactory explanation, it may be inferred such evidence would be unfavorable to him.

*Id.* at 127, 143 N.W.2d at 348 (emphasis added).

■ We conclude that the trial court did not err in denying defendant's requested instruction because the carpet was not *relevant* evidence for the purposes of the above principle. The color of the carpet was at issue in the case. However, defendant testified that the carpet was identical to the other carpet already introduced into evidence. The carpet from the bed of the truck would be merely duplicative evidence of the carpet's color and thus it is not necessarily relevant. Defendant also contends that the carpet is exculpatory evidence due to the fact that no semen, blood or pubic hairs were found on it. The degree of exculpatory value of this carpet is subject to question due to the amount of time that lapsed between the date of the offense and the date of the seizure and testing of the carpet. However, whatever exculpatory value exists is derived not from introduction of the carpet but rather from the D.C.I. laboratory report which advances defendant's assertion. Defendant's counsel possessed a copy of this report and could have introduced such into evidence but chose, perhaps for tactical reasons, not to do so.

The trial court did not err in refusing to give defendant's requested instruction to the jury.

III. *Motion for new trial.* Whitsel further contends that the court erred in overruling his motion for new trial and motion in arrest of judgment which were based upon alleged prosecutorial misconduct and discovery of new evidence. We find no reversible error.

■ A. *Prosecutorial misconduct.* Whitsel claims prosecutorial misconduct arising out of the State's alleged suppression of the carpet seized from his truck bed. To prevail on a claim that a defendant has been denied a fair trial by prosecutorial misconduct, defendant must show the misconduct and that defendant was prejudiced by it. *State v. Gilroy,* 313 N.W.2d 513, 519 (Iowa 1981). Whitsel argues that the State suppressed the carpet seized from his truck and that this amounted to prosecutorial

misconduct. We conclude that the State did not engage in misconduct and Whitsel was not prejudiced because the State did not suppress any *material* evidence.

We have noted that prosecutorial suppression of material evidence, for which a specific pretrial request was made, violates due process. *Fryer v. State,* 325 N.W.2d 400, 407 (Iowa 1982). We reiterated that:

> A new trial is warranted if the evidence was *wrongfully suppressed and is material.* "In order for materiality to exist it must appear that the suppressed evidence affected the outcome of the trial." But "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense. . . ."

*Id.* (emphasis added) (citations omitted).

Because this issue is of constitutional magnitude, we review under the de novo or totality of the circumstances standard. *Id.*

■ We conclude that the carpet was not "material" evidence by reference to our conclusion in division II that the carpet was not relevant to Whitsel's defense. It is clear that the carpet would not affect the outcome of the trial. Therefore, it is not necessary for us to address the "suppression" issue because the above constitutional standard is conjunctive in requiring that the evidence be *both* "wrongfully suppressed" and "material." Our finding that the carpet was not "material" evidence leaves the question of "suppression" a moot point.

■ B. *Newly discovered evidence.* Whitsel asserts that a new trial also is warranted by the discovery of new evidence. To prevail on a motion for new trial on the basis of newly discovered evidence under Iowa R.Crim.P. 23(2)(b)(8), a defendant must show: (1) it could not have been discovered earlier in the exercise of due diligence; (2) it is material to the issue, not merely cumulative or impeaching; and (3) it would probably change the result if a new trial is granted. *State v. Gilroy,* 313

N.W.2d 513, 522 (Iowa 1981). In addition, we have said that "motions for new trial on the basis of newly discovered evidence are not favored, should be closely scrutinized and granted sparingly. In passing on the motion the trial judge is vested with wide discretion." *Id.*

The evidence that was discovered after the trial involved statements allegedly made by the State's rebuttal witness, James R. Anderson, to the presentence investigator. During the trial, the witness, who was defendant's job supervisor, testified that Jess Whitsel had driven his truck to work every day during the first two weeks of October. This testimony was offered to rebut the testimony of the defendant who testified that he had not driven his truck to work on the day of the incident. The following exchange took place on cross-examination of the State's rebuttal witness:

> Q. On the 1st [of October], you're telling us he drove his truck [to work]? A. Uh-huh (Affirmative).
>
> Q. And you remember that date, right? A. Right.
>
> Q. Why? A. Because I stated, the first two weeks [of October] he drove it to work every day. . . .

Although Anderson did not testify at the hearing on defendant's motion for new trial, the presentence investigator testified at the hearing that to her best recollection Anderson told her that he remembered that Jess Whitsel had driven his truck to work on October 1st because "Jess brought the truck in, and wanted to raise it up [on the hoist] to check a problem in one of the back wheel wells [on the same day that my boss was there]." Whitsel then introduced evidence showing that he had worked on his wheels on the 16th of October, implying that the State's witness' recollection during trial was unreliable and incorrect. At most, the evidence was somewhat impeaching of Anderson's trial testimony. Whitsel argues that this evidence justified granting a new trial.

■ In view, however, of defendant's inculpatory statement and other evidence in

the record, we believe there was extensive evidence of defendant's guilt sufficient to support the discretion of the trial judge in overruling defendant's motion on the basis that the newly discovered evidence was not material to the issue and that it would probably not change the result if a new trial were to be granted.

■ IV. *Ineffective assistance of counsel.* Whitsel raises for the first time, on this appeal, several claims that he was denied the effective assistance of trial counsel. These claims were not presented to the trial court. When faced with similar claims, we have stated that the entire record must be examined and the totality of the circumstances evaluated in determining whether counsel's performance was within the range of normal competence. *Meier v. State,* 337 N.W.2d 204, 206 (Iowa 1983). We decline to decide today whether Whitsel was denied the effective assistance of trial counsel because the record before us is inadequate to address the contentions asserted. *See State v. Coil,* 264 N.W.2d 293, 296 (Iowa 1978) (court will not decide an ineffective assistance of counsel claim unless there is an adequate factual basis to support it). We reserve for postconviction relief application, or appropriate hearing, this and other similar cases that amount to an ex parte attack on trial counsel's competence; for even a lawyer is entitled to his or her day in court, especially when his or her professional reputation is at issue.

We have considered all of defendant's contentions, whether or not specifically discussed, and find no reversible error. The conviction is affirmed.

AFFIRMED.