STATE of Iowa, Plaintiff-Appellee,

v.

Anthony NOLAN, Defendant-Appellant.

84–1990.

Court of Appeals of Iowa.

April 23, 1986.

Charles L. Harrington, Chief Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Ann DiDonato, Asst. Atty. Gen., and John J. Hines, County Atty., for plaintiff-appellee.

Heard by DONIELSON, P.J., and SNELL and SACKETT, JJ.

SNELL, Judge.

Defendant Anthony Nolan was arrested on December 19, 1983, at about 6:00 p.m. in Dubuque when a police officer observed a pair of skis stolen from a Monticello residence in a ski rack on top of Nolan's car which was parked in front of a retail store. The officer visually observed that the pair of skis matched the description of the stolen pair in color, brand name, and serial number. When Nolan came out of the store and entered the vehicle, the officer arrested him for possession of stolen property and advised Nolan of his *Miranda* rights.

Nolan refused to speak with any of Dubuque's law enforcement personnel at the police station. However, he agreed to talk

with Monticello Police Officer Kuiper and Grant County, Wisconsin Deputy Sheriff Floerke. Both of these officers were off-duty on the evening of December 19 and arrived at the Dubuque police station out of uniform. Nolan spoke with each officer separately and made incriminating oral and written statements to both.

Nolan filed a pretrial motion to supress all incriminating statements, oral and written, on the ground that they were not voluntary. He contended that the police officers were coercive, misleading, devious and deceptive. He also challenged that he was wrongfully refused his right to counsel. He contended that any physical evidence obtained should also be suppressed as "tainted fruit."

At the police station Nolan was interrogated by two police officers separately. Nolan made incriminating oral and written statements implicating himself in the burglary of the skis and other burglaries in Monticello.

Monticello Police Officer Kuiper began the first interrogation by advising Nolan of his *Miranda* rights. Nolan initially told Kuiper that he had purchased the skis, however, he later indicated to Kuiper that the skis were stolen. At that point Kuiper read Nolan his Miranda rights again and Nolan signed a waiver of rights form. Nolan then admitted that he stole the skis during one of several burglaries that he had committed in Monticello.

During the course of Kuiper's interrogation, prior to the confession, Nolan asked, "Could I talk to a lawyer?" At the suppression hearing, during his direct examination, Officer Kuiper gave the following version of his reply to Nolan's request.

Q. And what was your response when he said that? A. I said, "Yes, you can," or "Anytime you want." I don't remember what words I used.

Q. What happened then after he asked if he could call a lawyer and you told him to go ahead? A. I just advised him that if he wanted to talk to an attorney, I'd just go back to Monticello.

Q. And what happened then? A. I don't recall what was said at the time. However, that's when he advised me that he wished to talk to one.

During his cross-examination, Kuiper was impeached by use of his pre-trial deposition in which he gave a different version of his response to Nolan's request to speak with an attorney.

Q. Now, when you began to interrogate Tony Nolan, he stated to you that he wanted to talk to a lawyer, did he not? A. I believe he stated to me, could he talk to a lawyer.

Q. And what did you say? A. Anytime you want.

Q. Is that what you said? A. Something to that effect, yes.

Q. Do you recall when I took your deposition on the 8th day of March, 1984, about 9:15 in the morning? A. I remember the deposition, yes.

Q. Do you recall me asking you at that time what you told Tony Nolan when he asked to talk to a lawyer? A. I don't recall my exact words.

Q. Would you read your answer into the record, page 19, lines 15 and 16. Read your answer, please. A. It says, "I advised him I wasn't up there to talk with his lawyer. I was up to talk with him."

Q. So that's what you told Tony when he asked to talk to a lawyer, you said, "I'm not up there to talk to your lawyer; I'm up there to talk to you." Is that right? A. I wasn't up there to talk to his lawyer.

\* \* \*

A. I said he could talk to a lawyer and that I would go home. It was 10 o'clock at night. I was off duty.

Q. Well, when he said he wanted to talk to his lawyer, why didn't you stop questioning him? A. I didn't ask him another question after he said that until he advised me that he wished to talk some more.

Q. You told him you weren't there to talk to his lawyer, you were there to talk to him? A. Exactly.

The second interrogation by Grant County, Wisconsin Deputy Sheriff Floerke commenced within twenty minutes after Officer Kuiper completed his questioning. Floerke again advised Nolan of his Miranda rights and obtained Nolan's written waiver. Nolan confessed to the burglaries in Monticello which occurred in November of 1983, and agreed to return stolen property items. These items were given to Floerke the following day. The suppression judge ruled on Nolan's motion to suppress as follows:

The oral and written statements made and executed by the defendant during the course of his interrogation by the law enforcement officers were freely and voluntarily made by the defendant without any threat, promise, inducement, coercion, fraud or duress. The defendant fully understood his Constitutional rights, which were clearly explained to him before each interrogation began. The procedure used in the case was in compliance with that established by *Miranda v. Arizona,* 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)]; *State v. Whitsel,* 339 N.W.2d 149 (Iowa 1983), and subsequent Iowa cases dealing with that issue.

Under the totality of the circumstances this Court is satisfied that the State has met its burden of proving the defendant knowingly and intelligently waived his Constitutional right to remain silent.

The jury found Nolan guilty of three counts of second degree burglary in violation of Iowa Code Sections 713.1 and 713.57 (1983). Nolan was sentenced to three concurrent terms not to exceed ten years.

On appeal, Nolan contends that the trial court erred in denying his motion to suppress and admitting his confessions into evidence in violation of his constitutional rights secured by the fifth and fourteenth amendments to the United States Constitution. He argues that because his confession to Officer Kuiper was obtained after he had invoked his right to counsel, it should have been inadmissible. He further alleges that because this confession was illegally obtained, his confession to Officer Floerke and the physical evidence derived therefrom should also be suppressed as "tainted fruit." Nolan also contends that his inculpatory statements to police should be suppressed on the additional ground that they were induced by promises of leniency and threats of penalties by Officer Kuiper.

■ Because constitutional safeguards are involved, we review the evidence pertaining to whether Nolan's confessions were illegally obtained de novo. *State v. Whitsel,* 339 N.W.2d 149, 152 (Iowa 1983). We will independently evaluate the totality of the circumstances under which the confessions were made. *State v. Hodges,* 326 N.W.2d 345, 347 (Iowa 1982).

■ In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court established that an accused has a fifth and fourteenth amendment right to have counsel present during custodial interrogation in order to satisfy the fifth amendment guarantee that an accused may not be compelled to incriminate himself. *Id.* 384 U.S. at 471, 86 S.Ct. at 1626, 16 L.Ed.2d at 722. The general rule is that an accused in custody is not subject to further interrogation by the authorities when he has requested counsel, unless he validly waives his earlier request for the assistance of counsel. *Smith v. Illinois,* —— U.S. ——, ——, 105 S.Ct. 490, 492, 83 L.Ed.2d 488, 493 (1984) (citing *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378, 386 (1981)).

[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interroga-

tion by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards,* 451 U.S. at 484–485, 101 S.Ct. at 1884–1885, 68 L.Ed.2d at 386. If interrogation continues in the absence of counsel after the accused has requested an attorney, the State has a heavy burden to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and the right to counsel. *Miranda,* 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724. We, therefore, must address a two part inquiry:

(1) whether the accused actually invoked his right to counsel, and if so,

(2) the court may admit his responses to further questioning only on finding that he:

(a) initiated further discussions with the police, and

(b) knowingly and intelligently waived the right he had invoked.

*Smith,* —— U.S. at ——, 105 S.Ct. at 493, 83 L.Ed.2d at 493–94 (citing *Edwards,* 451 U.S. at 484–86, 101 S.Ct. at 1884–85, 68 L.Ed.2d at 386–87); *Miranda,* 384 U.S. at 444–45, 86 S.Ct. at 1612, 16 L.Ed.2d at 706–07.

There is no dispute from the record that Nolan invoked his right to counsel during his interrogation by Officer Kuiper. There is also no question that in response to Nolan's request, Officer Kuiper stated something to the effect of "I'm not up here to talk with your lawyer; I'm up here to talk with you," indicating that he was off-duty and would return to Monticello. Kuiper testified that after this statement he did not ask Nolan any more questions until Nolan advised him that he would talk to Kuiper about the Monticello burglaries and that he knew the whereabouts of some of the stolen items. At this point Kuiper had Nolan read aloud his *Miranda* rights and sign the waiver of rights form. Nolan then confessed to a series of burglaries and signed a written statement.

■ The State argues that Nolan initiated further discussion regarding the burglaries and expressly waived his right to counsel which he had earlier invoked. It is true that an express written waiver is usually strong proof of the validity of that waiver. *Whitsel,* 339 N.W.2d at 152. However, "[i]t is not sufficient alone to establish waiver; we must find from the facts and circumstances that the waiver was voluntarily, knowingly and intelligently made." *Id.* (quoting *Fryer v. State,* 325 N.W.2d 400, 409 (Iowa 1982)).

The record shows that Nolan was initially given his *Miranda* rights at the time of his arrest on December 19, 1983. Upon arrival at the police station, Nolan telephoned his attorney and discussed Dubuque charges against him. Nolan refused to give a statement to any Dubuque law enforcement personnel. He also refused to allow anyone to come into the interrogation room with Officer Kuiper and would not talk if Kuiper tape-recorded their discussion. Officer Kuiper began his interrogation of Nolan by again reading Nolan his *Miranda* rights and Nolan acknowledged an understanding of each right.

The record indicates that Nolan has been involved with the law enforcement interrogation process more than a dozen times previously. The entire discussion between Nolan and Officer Kuiper lasted only thirty-five minutes. No suggestion of coercion, threats or physical mistreatment appears. It is apparent that Nolan initially was concerned with making a "deal" with Kuiper and believed that by cooperating with Kuiper charges against him would be reduced. This record establishes that Nolan was well aware of his *Miranda* rights and how to invoke and waive those rights.

■ After reviewing the circumstances surrounding Nolan's interrogation by Kuiper, we find that Nolan initiated further discussion with Officer Kuiper and voluntarily, knowingly and intelligently waived his right to counsel after its invocation. Therefore, we conclude that Nolan's confession to Officer Kuiper was appropriately admitted into evidence. Furthermore, No-

lan's confession to Officer Floerke and the returned stolen items were also admissible because they were not tainted by an illegal initial confession.

Nolan next contends that his confession to Officer Kuiper was involuntary due to promises of leniency and threats of penalties by Officer Kuiper. Nolan argues that Kuiper stated that he did not care if one count or ten counts were filed against Nolan and that if Nolan cooperated, Kuiper would speak to the county attorney and see what he could do for Nolan. Nolan claims that these statements induced his confession.

■■■ The burden is on the State to show by a preponderance of the evidence that an accused's inculpatory statement or confession was voluntary. *State v. Snethen*, 245 N.W.2d 308, 311 (Iowa 1976). In *Hodges*, the Iowa Supreme Court set forth the applicable standard for determining the admissibility of inculpatory statements:

> The test for determining the admissibility of confessions or inculpatory statements is voluntariness. *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 1879 6 L.Ed.2d 1037, 1057 (1961). This court determines the issue of whether officers have exercised coercion so as to render statements involuntary by examining the totality of the circumstances. We have explained this "totality of the circumstances" test in the following manner:
>
> No one factor is determinative of the voluntariness of a confession which necessarily depends upon the totality of the circumstances of the individual case.
>
> There is no talismanic definition of voluntariness. The "totality of the circumstances" encompasses the characteristics of the accused and the details of the interrogation process. The court determines the facts surrounding the inculpatory statement, assesses their psychological impact on defendant, and evaluates the legal significance of defendant's reactions.
>
> Defendant's choice to confess must be essentially free and unconstrained with

his will not overborne and his capacity for self-determination not critically impaired. *State v. Cullison*, 227 N.W.2d 121, 127 (Iowa 1975) (citations omitted).

*Id.* 326 N.W.2d at 347–48 (quoting *State v. Munro*, 295 N.W.2d 437, 440 (Iowa 1980)). The following factors are to be considered in deciding questions of involuntariness:

> The defendant's knowledge and waiver of his *Miranda* rights, the defendant's age, experience, prior record level of education and intelligence, the length of time defendant is detained and interrogated, whether physical punishment was used, including the deprivation of food or sleep, defendant's ability to understand the questions, defendant's physical and emotional condition and his reaction to the interrogation, whether any deceit or improper promises were used in gaining the admissions, and any mental weakness the defendant may possess.

*State v. Rhiner*, 352 N.W.2d 258, 262 (Iowa 1984) (quoting *Whitsel*, 339 N.W.2d at 153).

■■■ The Iowa Supreme Court has consistently forbidden the use of confessions which are obtained through promises or assurances that the accused would receive better treatment, less severe punishment, or more mercy by confessing guilt. *Hodges*, 326 N.W.2d at 348–49; *State v. Hilpipre*, 242 N.W.2d 306, 322 (Iowa 1976); *State v. Ware*, 205 N.W.2d 700, 703 (Iowa 1973); *State v. Mullin*, 249 Iowa 10, 16–18, 85 N.W.2d 598, 601–02 (1967). However, an investigating officer's offer to recommend psychiatric help or inform the prosecutor of defendant's cooperation are not tantamount to promises of leniency. *Whitsel*, 339 N.W.2d at 153; *State v. Miller*, 316 N.W.2d 23, 28 (Minn.1982) (fact that officer mentioned he would try to get psychiatric help for defendant if he was guilty did not render subsequent confession involuntary). An officer can also tell a suspect that it is better to tell the truth. *Hodges*, 326 N.W.2d at 349. "The line between admissibility and exclusion seems to be crossed, however, if the officer also tells the suspect what advantage is to be gained or is likely from making a confession. Ordinari-

ly the officer's statements then become promises or assurances, rendering the suspect's statements involuntary." *Id.*

■ The record in this case reveals that Officer Kuiper's statement that he did not care whether one count or ten counts were filed against Nolan was made in response to several queries by Nolan about what charges the county attorney was going to file against him and about what "deal" Kuiper could make for him. Kuiper testified that he indicated to Nolan that he did not know what the county attorney was going to charge but he was only concerned with evidence regarding one charge. The record does not reveal that Kuiper threatened to file more charges if Nolan did not cooperate with the investigation. Kuiper did not make a specific assurance of leniency but rather permissibly informed Nolan that he would tell the county attorney that Nolan was cooperative. Kuiper did not expressly state or imply that any offered "help" included reduction of charges or leniency from the courts or prosecuting authorities. We conclude that Officer Kuiper's comments were not tantamount to a promise of leniency or a threat of penalty.

■ Other facts relevant to our determination that Nolan's confession was voluntary include that prior to confessing, Nolan had been given and waived his *Miranda* rights on three occasions. Also, Nolan is of average intelligence and familiar with the criminal justice system. Further, no prolonged interrogation occurred. The interview between Nolan and Officer Kuiper lasted only thirty-five minutes and was held during normal working hours only a few hours after Nolan's arrest. Nolan was offered a soda, allowed to smoke and was not handcuffed. The record is void of any indication that threats or force were used to elicit Nolan's confession.

In sum, the totality of the circumstances reveals the complete absence of any form of coercion and demonstrates that Nolan's confession was voluntary. Therefore, the trial court properly denied Nolan's motion to suppress and admitted his confession into evidence.

**AFFIRMED.**