# IN THE SUPREME COURT OF IOWA

No. 19–0725

Submitted December 15, 2020—Filed March 19, 2021

**STATE OF IOWA,**

Appellant,

vs.

**MICHAEL HILLERY,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Dubuque County, Monica L. Zrinyi Wittig, Judge.

Defendant seeks further review of court of appeals decision reversing a district court order granting his motion to suppress based on a promise of leniency. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT SUPPRESSION RULING REVERSED; CASE REMANDED WITH INSTRUCTIONS.**

Waterman, J., delivered the opinion of the court, in which all justices joined. Appel, J., filed a special concurrence.

Thomas J. Miller, Attorney General, Kevin Cmelik (argued), Assistant Attorney General, Katie Krickbaum, Assistant Attorney General, C.J. May, County Attorney, and Shea M. Chapin, Assistant County Attorney, for appellant.

Martha J. Lucey (argued), State Appellate Defender, for appellee.

**WATERMAN, Justice.**

In this appeal, we must decide whether the district court erred by granting a motion to suppress physical evidence and statements based on a police officer's alleged promise of leniency. The officer observed the defendant make a possible drug buy and initiated a *Terry* stop on a public sidewalk. After the officer told him he would not be arrested that day if he cooperated but could be arrested later, the defendant handed over crack cocaine and marijuana. The defendant's subsequent cooperation fell short and three months later, the officer charged him with possession. The district court granted the defendant's motion to suppress after ruling the officer made an improper promise of leniency and the narcotics the defendant handed over were "fruit of the poisonous tree." We granted the State's application for discretionary review, and transferred the case to the court of appeals, which reversed the suppression ruling. We then granted the defendant's application for further review.

On our review, we agree with the court of appeals that the officer properly detained the defendant in a *Terry* stop, and the ensuing discussion seeking a cooperation agreement did not cross the line to an improper promise of leniency. The officer kept his promise not to arrest the defendant that day, and fairly warned the defendant that he could be arrested later for possession. We decline the State's repetitive invitation to abandon our common law evidentiary test for promises of leniency. For the reasons elaborated below, we affirm the decision of the court of appeals on the alleged promise of leniency, vacate its decision on the defendant's constitutional claims, reverse the district court's suppression ruling, and remand the case for a new suppression hearing on the constitutional claims and the inevitable discovery doctrine.

### I. Background Facts and Proceedings.

On the afternoon of November 14, 2018, Investigator Chad Leitzen of the Dubuque Drug Task Force drove past a house located at 1910 1/2 Ellis Street (Ellis house) where he saw Michael Hillery riding a bicycle up to the front door. Leitzen circled back to the Ellis house about three minutes later and saw Carl Watkins, known as "Country," standing next to Hillery, who promptly biked away.

Leitzen had been a police officer for sixteen years and had been trained on drug interdiction. He testified that a sign of uncontrolled drug buys is when numerous people make short-term visits—less than five to ten minutes—to a specific address where they have "no known ties." Leitzen noted that he had never seen Hillery at the Ellis house before, that Hillery made a three-minute stop, that the two men did not appear to be close in age, and that nothing indicated that they had a relationship other than as drug dealer–user. Leitzen knew that Hillery had drug convictions, that officers were investigating the Ellis house after a heroin overdose, and that Watkins reportedly sold crack cocaine. These facts led Leitzen to believe that he had witnessed a narcotics transaction.

Leitzen followed Hillery, waiting to stop him until they were out of Watkins's view. Leitzen drove past Hillery, who was pushing his bike up a hill. Leitzen parked and called out to him: "Mike, can you stop just a minute so I can talk to you?" Hillery ignored him and continued walking. Leitzen got out of his car and approached. He smelled a strong odor of fresh marijuana coming from Hillery. No one else was present. Leitzen again told him to stop; Hillery persisted in ignoring him. Because Leitzen was in plain clothes, he showed Hillery his badge and identified himself as Investigator Leitzen with the Drug Task Force. Hillery continued walking and said he had done nothing wrong.

Leitzen stepped in front of Hillery's bicycle and this time told Hillery he needed to give him what he had just bought.  Hillery responded that he had not bought anything and had gone to the house to drop off money he owed a coworker.  Leitzen replied that he was sure Hillery had bought something and that Hillery needed to give it to him.  As Leitzen later testified,

> I told [Hillery] that I was sure that he bought something, and he needs to give it to me.  Um, I also told him that I was not looking to take him to jail that day.  I said, I'm looking more for your cooperation to try and get your help to get into that place.  Um, I said, That's not to say that you're not going to go to jail someday for this, but I'm not looking to take you to jail today for it.  I just want your cooperation.

Hillery then reached into his front left pants pocket and pulled out his hand, balled up in a fist.  It was clear to Leitzen that Hillery had taken something out of his pocket.  Hillery held his hand out, but then hesitated and repeated that he had not bought anything and had not done anything wrong.  Leitzen put his hand underneath Hillery's balled up fist and told Hillery that he needed to drop what he had.  Hillery dropped a plastic bag containing what Leitzen recognized as crack cocaine.

As soon as he dropped the bag, Hillery shoved his bike into Leitzen, who dropped the crack cocaine and his radio.  Hillery took off running.  Leitzen gave chase and caught him.  As Leitzen later testified,

> [A]s soon as I caught him, he -- he immediately said, I thought you said I'm not going to jail today.  And I said, I told you that I need your cooperation, and you're not going to go to jail today if you start cooperating, but that better happen pretty quickly, because there's officers coming, and I could hear them coming.

At that point, a man stepped out of an apartment and told Leitzen he had called the police.

Soon after, Officer Jay Murray arrived. By that time, Hillery had told Leitzen he would cooperate. Leitzen asked Hillery to help him find the bag of crack cocaine, and Hillery found it where Leitzen had dropped it. Leitzen asked Hillery if he had marijuana in his pocket because he could smell it. Hillery told him that he had a small amount in his pocket and handed it over when Leitzen told him to do so. Hillery told Leitzen that Watkins sold him the crack cocaine for $40 and the marijuana for $30.

Leitzen called Investigator Adam Williams to the scene, who had been working on the overdose case involving the Ellis house. Williams spoke with Hillery, who said he would be willing to cooperate with the Drug Task Force, exchanged phone numbers with the officers, and shortly thereafter, was allowed to leave the area with his bicycle. Both investigators testified that they never promised Hillery that he would not be charged with a crime later. Hillery's promised cooperation proved problematic.

Leitzen testified that Hillery was "difficult" to work with: at first, the officers were unable to get ahold of him and once they did, he had essentially lost all contact with the target at the Ellis house and lost the phone number. When officers tried to make a recorded phone call for an undercover buy, the phone number was incorrect and the call was answered by a Hispanic male who did not match the target. Hillery tried another time to perform an undercover purchase, but no one answered when he knocked on the door of the target house. On February 15, 2019, after learning that Hillery had been arrested on a different drug charge, Leitzen charged him with one count of possession of a controlled substance (crack cocaine) and one count of possession of a controlled substance (marijuana) based on the November 14 incident. Hillery pled not guilty.

On March 12, Hillery's counsel filed a motion to suppress, alleging that his stop and detention violated his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution and article I, section 8 of the Iowa Constitution. He also argued that he was questioned without counsel, violating the Fifth and Sixth Amendments to the United States Constitution and article I, section 10 of the Iowa Constitution. Two days before the hearing on the motion, Hillery filed an addendum in which he asked for suppression of "evidence and any confession or statements" that he had made because they resulted from a promise of leniency, in violation of the Fifth Amendment to the United States Constitution and article I, sections 1 and 8 of the Iowa Constitution.

At the motion hearing, Leitzen and Williams testified. The State argued that Leitzen had "reasonable suspicion to believe that a crime may have occurred" and that Leitzen's statement that Hillery would not be arrested that day, but that he could be charged later, was not "harmful." Defense counsel argued that the stop was improper and that the promise of leniency made Hillery's actions involuntary such that the court should suppress Hillery's statements and the physical evidence.

The district court granted the motion to suppress, finding that the evidence obtained after the officer promised leniency was fruit of the poisonous tree and inadmissible. The State filed an application for discretionary review as well as a motion to reconsider. We granted the State's application for discretionary review and motion for stay. The next day, after it had lost jurisdiction, the district court denied the State's motion to reconsider, stating, there was "insufficient probable cause to believe that criminal activity was afoot." We transferred the case to the court of appeals. On appeal, both sides briefed the constitutional claims and inevitable discovery doctrine as well as the common law evidentiary

test for promises of leniency. The court of appeals reversed the district court's suppression ruling, holding that Leitzen made no improper promise of leniency. The court of appeals rejected Hillery's constitutional claims without reaching the inevitable discovery issue. We granted Hillery's application for further review.

## II. Standard of Review.

"Our review of the district court's ruling on promises of leniency under the common law evidentiary test is for corrections of errors at law." *State v. Howard*, 825 N.W.2d 32, 39 (Iowa 2012). "We review determinations of whether to suppress both evidence obtained and statements made in violation of constitutional guarantees de novo." *State v. Tyler*, 867 N.W.2d 136, 152 (Iowa 2015).

## III. Analysis.

We first address whether the common law evidentiary test applies and hold that it does. We decline the State's renewed invitation to abandon that test. We conclude that the officers' statements to Hillery did not cross the line into an improper promise of leniency. We then explain why we decline to decide the constitutional challenges or inevitable discovery argument due to the inadequate record and remand the case for the district court to conduct a new suppression hearing on those issues.

**A. The Common Law Evidentiary Test Applies.** The State argues the common law test should not be applied for two reasons: (1) Hillery failed to raise that ground for suppression in district court; and (2) we should abandon the evidentiary rule in favor of the constitutional voluntariness standard. Neither reason is persuasive.

First, we agree with the court of appeals that Hillery adequately raised the common law issue in district court. Hillery's addendum to his motion to suppress argued the "evidence and statements . . . were obtained

. . . after a promise of leniency" in violation of constitutional provisions. But he also cited precedent to the district court applying our common law evidentiary test, including *State v. Howard*, where we "directed district courts to 'first employ the evidentiary test to determine the admissibility of confessions challenged on grounds of a promise of leniency.'" 825 N.W.2d at 39 (quoting *State v. Madsen*, 813 N.W.2d 714, 726 n.1 (Iowa 2012)). As we further explained in *State v. Madsen*, "[i]f application of the evidentiary test requires suppression of the confession, the district court need not also apply a totality-of-the-circumstances test." 813 N.W.2d at 726 n.1. The prosecution was not blindsided when the district court applied the evidentiary test in its suppression ruling, and that issue—squarely decided by the district court—is preserved for appellate review.

Second, we have already considered and rejected the State's arguments for abandoning the evidentiary test. In *Madsen*, we concluded that

> the evidentiary rule has the advantage of clarity and is a better deterrent against police misuse of threats and promises of leniency to obtain confessions. Courts and commentators have long recognized promises of leniency can induce false confessions leading to wrongful convictions of the innocent.

*Id.* at 725. We elaborated that the "use of a per se exclusionary rule eliminates the need for the court to attempt to read the mind of defendant to determine if his confession, in fact, was induced by or made in reliance upon the promise of leniency." *Id.* at 726. For the same reasons, as well as stare decisis, we again decline to abandon the test. *See Book v. Doublestar Dongfeng Tyre Co.*, 860 N.W.2d 576, 594 (Iowa 2015) ("Stare decisis alone dictates continued adherence to our precedent absent a compelling reason to change the law.").

**B. The Officer Did Not Improperly Promise Leniency.**

"Voluntary confessions are not merely a proper element in law enforcement, they are an unmitigated good, essential to society's compelling interest in finding, convicting, and punishing those who violate the law." *State v. Polk*, 812 N.W.2d 670, 674 (Iowa 2012) (quoting *State v. Pearson*, 804 N.W.2d 260, 266 (Iowa 2011)). But "promises of leniency create the risk of a false confession leading to a wrongful conviction." *Id.* Thus, "a 'confession can never be received in evidence where the prisoner has been influenced by any threat or promise.'" *Id.* (quoting *State v. McCoy*, 692 N.W.2d 6, 27 (Iowa 2005)). This per se rule "deters police from using a tactic that might induce the innocent to confess falsely." *Id.*

We agree with the court of appeals that Officer Leitzen did not make Hillery an improper promise of leniency. Rather, after a proper *Terry* stop, Leitzen urged Hillery to cooperate:

> I told [Hillery] that I was sure that he bought something, and he needs to give it to me. Um, I also told him that I was not looking to take him to jail that day. I said, I'm looking more for your cooperation to try and get your help to get into that place. Um, I said, That's not to say that you're not going to go to jail someday for this, but I'm not looking to take you to jail today for it. I just want your cooperation.

Leitzen acted within his authority as a police officer by offering to refrain from arresting Hillery "that day" while warning Hillery he could be charged later. Leitzen kept his promise and did not arrest Hillery that day.

We have never held that such discussions, in the context of seeking a suspect's cooperation agreement, constitute an improper promise of leniency requiring suppression of statements or physical evidence. The court of appeals determined that "Officer Leitzen's statement that he would not take Hillery to jail that day and wanted Hillery's cooperation to build a

case against someone else was not language that was likely to induce Hillery to make a false confession." We agree.

As the State argued, "[A]n offer to enter into a long-term cooperation agreement is not the type of 'promise' that warrants per se exclusion of any statements that follow." Cooperation agreements bind both the defendant and the State, decreasing the risk of an unfair advantage. *See State v. Beres*, 943 N.W.2d 575, 583 (Iowa 2020) (holding that the state's breach of a plea agreement was not excused by the nonoccurrence of the defendant's promised interview, because the state itself "refused to cooperate in the scheduling or taking of an interview"); *State v. Bergmann*, 600 N.W.2d 311, 315 (Iowa 1999) ("[T]rial counsel failed to perform an essential duty when he did not object to the prosecutor's breach of the cooperation agreement."). When an officer offers the defendant the opportunity to cooperate to avoid immediate arrest, the defendant has a choice, albeit a difficult one. However, "the criminal process often requires suspects and defendants to make difficult choices." *South Dakota v. Neville*, 459 U.S. 553, 564, 103 S. Ct. 916, 923 (1983).

Hillery's case is distinguishable from those holding the officer improperly promised leniency to obtain a confession. In *State v. McCoy*, the defendant confessed after the detective told him at least twenty-five times that "if he didn't pull the trigger he would not be in any trouble." 692 N.W.2d at 28. We reversed his conviction for first-degree murder and required a new trial. *Id.* at 12, 31. In *State v. Kase*, we held the officer crossed the line by telling the defendant "that if she told him what she knew about Vaughn's death and signed a consent to search her apartment no criminal charges would be filed against her; otherwise, . . . she would be charged with murder." 344 N.W.2d 223, 226 (Iowa 1984). We reversed her conviction for first-degree murder and required a new trial. *Id.* at 224,

227.  By contrast, Leitzen advised Hillery that he could "go to jail someday for this."

Leitzen's disclaimer kept his statements to Hillery from crossing the line into an improper promise of leniency.  *See State v. Whitsel*, 339 N.W.2d 149, 153 (Iowa 1983) (holding no improper promise of leniency was made when defendant confessed after the officers offered to report his cooperation to the county attorney while expressly disclaiming any guarantee that he would not be charged).  Indeed, we have noted the absence of such disclaimers when holding an officer improperly promised leniency:

> Detective Hull's repeated references to getting help combined with his overt suggestions that after such treatment Howard could rejoin Jessica and A.E. conveyed the false impression that if Howard admitted to sexually abusing A.E. he merely would be sent to a treatment facility similar to that used to treat drug and alcohol addiction in lieu of further punishment. *Significantly, Detective Hull did not counter this false impression with any disclaimer that he could make no promises or that charges would be up to the county attorney.*  We hold his interrogation crossed the line into an impermissible promise of leniency, rendering the confession that followed inadmissible.

*Howard*, 825 N.W.2d at 41 (emphasis added).

A closer case is *In re J.D.F.*, 553 N.W.2d 585 (Iowa 1996).  There, the officer confronted a juvenile reportedly seen earlier carrying a weapon.  *Id.* at 587.  The juvenile initially denied having a weapon, but then revealed its location after the officer told him if he did so the officer "would not take him into custody at juvenile hall nor would he file charges against him." *Id.*  The county attorney later filed charges against the juvenile, whom we held was prejudiced by the officer's promise of leniency.  *Id.* at 589–90. But unlike the officer in *J.D.F.*, Leitzen accurately warned Hillery he could

be charged later and merely promised, truthfully, that he would not take him to jail that day.

We hold that the district court erred by ruling that Leitzen made an improper promise of leniency. We therefore do not reach the State's alternative argument that physical evidence cannot be suppressed as a remedy for an improper promise of leniency.

**C. The Constitutional Claims and Inevitable Discovery Require a New Suppression Hearing.** The district court granted Hillery's motion to suppress based on its erroneous ruling on the evidentiary test without deciding whether he was subjected to a custodial interrogation and without applying the totality-of-the-circumstances test. *See Madsen*, 813 N.W.2d at 726 n.1 ("If the district court finds the evidentiary test does not require exclusion, it should still employ the totality-of-the-circumstances test to ensure the State has met its burden of establishing that defendant's confession was voluntary."). Hillery argues that his action in taking the crack cocaine from his pocket and dropping it into Leitzen's hand was tantamount to a confession coerced by the officer's commands. The court of appeals determined that his "incriminating statements were voluntarily made" and that he "was not coerced or under duress" and found no violation of his *Miranda* rights. We in turn agree with the State's appellate brief that we should remand the case for a new suppression hearing on the constitutional claims.

The State argues that if Hillery had not handed over the drugs, he would have been arrested, and the physical evidence inevitably would have been discovered in the ensuing search incident to arrest. The inevitable discovery issue was not decided in the suppression ruling under review. The district court's subsequent ruling (denying the State's motion to reconsider) would foreclose the State's inevitable discovery argument

based on the district court's belated and erroneous conclusion that there was no probable cause to arrest Hillery. That ruling is a nullity, because it was filed the day after we granted discretionary review and thereby divested the district court of jurisdiction. *See State v. Mallett*, 677 N.W.2d 775, 776–77 (Iowa 2004) (vacating district court ruling filed after the notice of appeal divested jurisdiction). Because the issue likely will arise on remand, however, we reiterate that under our precedent, the smell of marijuana on Hillery's person alone supports a probable cause finding. "[A] trained officer's detection of a sufficiently distinctive odor [of marijuana], *by itself or* when accompanied by other facts, may establish probable cause." *State v. Watts*, 801 N.W.2d 845, 854 (Iowa 2011) (emphasis added). And here, other facts supported probable cause: Officer Leitzen knew Hillery had narcotics convictions and saw him make a possible drug buy in a three-minute encounter with a suspected drug dealer at a house connected to a recent drug overdose.

We agree with the court of appeals that this encounter began as a proper *Terry* stop. "Our decisions have universally held that the purpose of a *Terry* stop is to investigate crime." *State v. Tyler*, 830 N.W.2d 288, 293 (Iowa 2013). *Miranda* warnings were not required at the outset. *See Maryland v. Shatzer*, 559 U.S. 98, 113, 130 S. Ct. 1213, 1224 (2010) ("[T]he temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop does not constitute *Miranda* custody." (citation omitted)). The parties dispute whether the subsequent interactions led to a custodial interrogation requiring a *Miranda* warning or an involuntary confession under the totality-of-the-circumstances test. And the parties dispute whether Hillery would have been arrested that day if he had not turned over the drugs and agreed to cooperate. The State concedes he was not arrested that day. Officer Leitzen did not testify whether he would

have arrested and searched Hillery had he failed to hand over the crack cocaine. In our view, an evidentiary record should be developed on the inevitable discovery issue that may support the admissibility of the physical evidence regardless of whether Hillery's street-side confession was involuntary or violated *Miranda.*

Courts suppress evidence obtained in violation of constitutional rights to deter police misconduct. *Nix v. Williams*, 467 U.S. 431, 442–43, 104 S. Ct. 2501, 2508 (1984). Yet,

> [if] the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received.

*Id.* at 444, 104 S. Ct. at 2509; *see also State v. Seager*, 571 N.W.2d 204, 211 (Iowa 1997) ("Similarly, if the evidence 'ultimately or inevitably would have been discovered by lawful means,' the exclusionary rule serves no purpose and does not apply." (quoting *Nix*, 467 U.S. at 444, 104 S. Ct. at 2509)); *J.D.F.,* 553 N.W.2d at 591 (applying inevitable discovery doctrine to allow evidence of weapon disclosed by juvenile to support his delinquency adjudication).

### IV. Disposition.

For these reasons, we affirm the decision of the court of appeals holding there was no improper promise of leniency. We reverse the district court's suppression ruling. We vacate the court of appeals decision rejecting Hillery's constitutional challenges. We remand the case for the district court to conduct a new suppression hearing on Hillery's constitutional claims and the inevitable discovery issue.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT SUPPRESSION RULING REVERSED; CASE REMANDED WITH INSTRUCTIONS.**

All justices concur.  Appel, J., files a special concurrence.

**APPEL, Justice (concurring specially).**

I agree with the majority's disposition of the question of whether the officer improperly promised Michael Hillery leniency. Officer Leitzen testified without contradiction that he told Hillery that "I was not looking to take him to jail that day" but that he also told Hillery "[t]hat's not to say that you're not going to go to jail someday for this, but I'm not looking to take you to jail today for it. I just want your cooperation." There is nothing in the record to suggest these statements were false or some kind of clever trick.

The majority remands the case to the district court to allow the development of a hypothetical "woulda, coulda, shoulda" scenario to speculate on what Officer Leitzen might have done had events taken a different turn. The majority notes that the district court did not consider this issue. As we are not ordinarily first responders on questions of constitutional dimension, I do not object to remand of the case to consider the issue. I want to make clear, however, that by remanding the case for consideration of the inevitable discovery exception we do not necessarily endorse the position of any party or the application of the inevitable discovery exception to this case.

The inevitable discovery exception was first embraced by the United States Supreme Court in an Iowa case, *Nix v. Williams*. 467 U.S. 431, 104 S. Ct. 2501 (1984). In *Nix*, a detective convinced Williams to lead police to the body of a murder victim in a culvert along the interstate in violation of his Sixth Amendment right to counsel. *Id.* at 436, 104 S. Ct. at 2505. The state argued, however, that an organized and systematic police search for the body was in progress along the interstate, that searchers were examining culverts, and that they were approaching the body's location

when Williams led police to the body. *Id.* at 435, 104 S. Ct. at 2504. In short, there was an active and independent source which would have, based upon "historical facts," inevitably led to discovery of the body. *Id.* at 443–44, 448–50, 104 S. Ct. at 2508–09, 2511–12.

The inevitable discovery exception is a variant of the independent source doctrine. *See id.* at 443–44, 444 n.5, 104 S. Ct at 2508–09, 2509 n.5. The difference is one of timing. In independent source doctrine cases, the evidence actually was discovered from an independent source. *Id.* In cases involving the inevitable discovery exception there is a difference, namely, although the independent source was proceeding toward discovery of the evidence, the evidence was actually discovered as a result of the illegal conduct. *Id.* at 444, 104 S. Ct. at 2509.

There is some dispute in the caselaw regarding the proper scope of the inevitable discovery doctrine. Some cases emphasize that the state has the burden of showing that the evidence would have been uncovered in any event from an independent source. *United States v. Young*, 573 F.3d 711, 722 (9th Cir. 2009) (rejecting inevitable discovery exception where state failed to identify a source independent of police misconduct). It has also been held that the state cannot maintain that because there was probable cause, a warrant could have been obtained. *United States v. Echegoyen*, 799 F.2d 1271, 1280 n.7 (9th Cir. 1986).

Further, some courts demand that the state show "historical facts" that demonstrate the independent source was being actively pursued at the time of the illegal discovery. *Nix*, 467 U.S. at 444 n.5, 104 S. Ct. at 2509 n.5. For example, in *United States v. Eng*, the Second Circuit noted that the state must show "demonstrated historical facts" not mere hypothetical investigation, to support application of the doctrine. 971 F.2d 854, 861–64 (2d Cir. 1992) (quoting *Nix*, 467 U.S. at 444 n.5, 104 S. Ct.

2509 at n.5).  Similarly, in *United States v. Brookins*, the court noted that the state must show that the means that "made discovery inevitable . . . were being actively pursued by the police prior to the occurrence of the illegal police conduct."  614 F.2d 1037, 1042 n.2 (5th Cir. 1980).  *See generally* Tom N. McInnis, Nix v. Williams *and the Inevitable Discovery Exception: Creation of a Legal Safety Net*, 28 St. Louis U. Pub. L. Rev. 397 (2009); Eugene L. Shapiro, *Active Pursuit, Inevitable Discovery, and the Federal Circuits: The Search for Manageable Limitations Upon an Expansive Doctrine*, 39 Gonz. L. Rev. 295 (2003–2004); Sarah DeLoach, Comment, *Keeping the Faith with the Independent Source Foundations of Inevitable Discovery: Why Courts Should Follow Justice Breyer's Active and Independent Pursuit Approach From* Hudson v. Michigan, 83 Miss. L.J. 1179 (2014); Lauren Young Epstein, Note, *Limits of the Inevitable Discovery Doctrine in* United States v. Young*: The Intersection* of *Private Security Guards, Hotel Guests and the Fourth Amendment*, 40 Golden Gate U. L. Rev. 331 (2010).

Whether these requirements or any other requirements apply and whether the state has met its burden on the record developed in this case are matters for the district court to consider on remand.